UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────

INDIANA ELECTRICAL WORKERS PENSION
TRUST FUND, IBEW, on behalf of itself
and all others similarly situated,

                Plaintiff,

      - against -

ROBERT B. MILLARD; ARTHUR L. SIMON;
JOHN M. SHALIKASHVILI; THOMAS A.
CORCORAN; ALAN H. WASHKOWITZ; ROBERT V.
LAPENTA; CLAUDE R. CANIZARES; JOHN E.
MONTAGUE; JOHN P. WHITE; PETER A.
COHEN; THE ESTATE OF FRANK C. LANZA;
and L-3 COMMUNICATIONS HOLDINGS, INC.,

              Defendants.
────────────────────────────────────

07 Civ. 172 (JGK)

OPINION AND ORDER

JOHN G. KOELTL, District Judge:

    This case raises the question whether the Securities
Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C.
§ 78bb(f), preempts a class action filed in state court by a
shareholder of the defendant L-3 Communications Holdings, Inc.
("L-3"). The plaintiff, Indiana Electrical Workers Pension
Trust Fund (the "Pension Fund"), filed a Class Action Complaint
("Complaint") in the New York State Supreme Court, New York
County, on November 20, 2006, alleging that the defendants, who
include officers and directors of L-3 and the corporation
itself, breached their fiduciary duty of disclosure under
Delaware law by making misrepresentations and failing to
disclose material facts about a scheme of improperly backdating

stock options and thereby persuading shareholders to vote to authorize an increase in the number of shares available under L-3's stock option plan by 6.5 million.

On January 9, 2007, the defendants removed the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441 and the removal provision of SLUSA, 15 U.S.C. § 78bb(f)(2).  The defendants now have moved to dismiss the Complaint pursuant to SLUSA's preemption provision, 15 U.S.C. § 78bb(f)(1).  The plaintiff has cross-moved to remand the Complaint to the New York State Supreme Court and for an award of attorneys' fees pursuant to 28 U.S.C. § 1447(c).  The two cross-motions turn on the same question:  whether the Complaint asserts a claim that falls within SLUSA's preemption provision.  Cf. Winne v. Equitable Life Assurance Soc'y, 315 F. Supp. 2d 404, 409 (S.D.N.Y. 2003) ("[T]he analysis for removal and dismissal is essentially the same.").  More specifically, the case hinges on the proper interpretation of a clause in SLUSA titled "Preservation of certain actions," 15 U.S.C. § 78bb(f)(3), and commonly known as the "Delaware carve-out," which exempts certain class actions based on the statutory or common law of the issuer's state of incorporation.

For the reasons explained below, the Court finds that the claims asserted fall within the Delaware carve-out and thus are

not preempted by SLUSA.  The Complaint is therefore **remanded** to the New York State Supreme Court.

## I.

The following facts alleged in the Complaint are accepted as true for the purposes of deciding the present motions.  The defendants allegedly participated in a stock option backdating scheme between 1998 and 2003 by which L-3's executive officers and other employees received millions of dollars of undisclosed compensation.  (Compl. ¶¶ 1, 27-28.)  L-3's proxy statements from 2003 to 2006 falsely stated that the strike price for employee stock options would be set at the stock's fair market value on the date of the grant (id. ¶¶ 3, 38-39, 42, 45, 48, 51, 67-68, 74-75), and L-3's annual reports and Forms 10-K overstated its net income and retained earnings during the same period (id. ¶¶ 43-44, 46-47, 49-50, 52-53, 68, 75).  L-3 publicly admitted in a July 27, 2006 press release that it granted options between May 1998 and July 2003 that carried unauthorized "dates of grant" that were earlier than the true date of the grants and thus resulted in artificially low strike prices.  (Id. ¶¶ 29-31.)  The 2004 proxy statement included a provision seeking shareholder approval to increase the number of shares available to cover L-3's stock option plan by 6.5 million shares.  (Id. ¶¶ 38, 54.)  If the option backdating scheme had

been revealed to L-3's shareholders (the putative class members) prior to their 2004 proxy vote, they never would have approved the addition of 6.5 million shares to the stock option plan. (Id. ¶ 55.)  The increase in shares dedicated to the stock option plan pursuant to the 2004 amendment and the "at least 1.84 million options" issued since that amendment have resulted in dilution to the shareholders' voting power and their proportionate share of the company.  (Id. ¶ 71.)

Count One of the Complaint alleges that the defendants breached their fiduciary duty of disclosure by failing to disclose the option backdating scheme and by causing L-3 to publish false information about the option grants in its proxy statements, Forms 10-K, and annual reports.  (Id. ¶¶ 65-71.) Count Two requests rescission of the shareholder-approved 2004 amendment to the stock option plan, which added 6.5 million shares to the number of shares authorized under the plan.  (Id. ¶¶ 72-80.)  The Complaint seeks relief in the form of declaratory judgment, rescission, injunctive relief, compensatory damages, and an award of costs and expenses.


**II.**

SLUSA confers upon federal courts exclusive jurisdiction over certain "covered class actions" that relate to securities fraud.  15 U.S.C. § 78bb(f)(1); see also Merrill Lynch, Pierce,

Fenner & Smith, Inc. v. Dabit, 126 S. Ct. 1503, 1511-12 (2006);
Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332
F.3d 116, 123 (2d Cir. 2003) (finding that SLUSA "completely
preempt[s] the field of certain types of securities class
actions").  SLUSA was enacted in response to an unintended
consequence of the Private Securities Litigation Reform Act of
1995 (the "PSLRA"), 15 U.S.C. §§ 77z-1, 78u-4, which introduced
various limitations designed to deter perceived nuisance suits
including class actions involving nationally traded securities.
See Dabit, 126 S. Ct. at 1510-11.  The PSLRA "prompted at least
some members of the plaintiffs' bar to avoid the federal forum
altogether" by bringing class actions under state law.  Id. at
1511.  SLUSA was designed to "stem this shif[t] from Federal to
State courts and prevent certain State private securities class
action lawsuits alleging fraud from being used to frustrate the
objectives of [the PSLRA]."  Id. (internal quotation marks
omitted).  It accomplished this goal by prohibiting certain
types of securities class actions from being brought in state or
federal court.  Alessi v. Beracha, 244 F. Supp. 2d 354, 357 (D.
Del. 2003).

The core provision of SLUSA provides:

**(1) Class action limitations**
No covered class action based upon the statutory or
common law of any State or subdivision thereof may
be maintained in any State or Federal court by any
private party alleging--

**(A)** a misrepresentation or omission of a
material fact in connection with the purchase or
sale of a covered security; or
**(B)** that the defendant used or employed any
manipulative or deceptive device or contrivance in
connection with the purchase or sale of a covered
security.

15 U.S.C. § 78bb(f)(1); see also Dabit, 126 S.Ct. at 1511-1512.

A "covered class action" is further defined to include a lawsuit

in which damages are sought on behalf of more than fifty people,

and a "covered security" is one traded nationally and listed on

a regulated national exchange.  15 U.S.C. § 78bb(f)(5); see also

Dabit, 126 S. Ct. at 1512 & nn.8-9.

SLUSA further provides that any "covered class action"

meeting the provisions of § 78bb(f)(1) "shall be removable to

the Federal district court for the district in which the action

is pending."  15 U.S.C. § 78bb(f)(2).  It is pursuant to

§ 78bb(f)(2) that the defendants removed the Complaint.

Four conditions must be satisfied to trigger SLUSA's

removal and preemption scheme:  (1) the underlying suit must be

a "covered class action"; (2) the action must be based on state

or local law; (3) the action must concern a "covered security";

and (4) the defendants must have misrepresented or omitted a

material fact or employed a manipulative device or contrivance

"in connection with the purchase or sale" of that security.

Felton v. Morgan Stanley Dean Witter & Co., 429 F. Supp. 2d 684,

690-91 (S.D.N.Y. 2006); cf. Alessi, 244 F. Supp. 2d at 357.  In

its motion to remand, the plaintiff does not dispute that its Class Action Complaint satisfies all four conditions and therefore falls within the scope of SLUSA's core preemption provision, 15 U.S.C. § 78bb(f)(1).[1]

However, the plaintiff contends that its claims also satisfy the conditions of a savings clause in SLUSA, known as the "Delaware carve-out," which rescues certain "covered class actions" based on the law of the issuer's state of incorporation from SLUSA's preemptive sweep.  15 U.S.C. § 78bb(f)(3)(A); see also Lewis v. Termeer, 445 F. Supp. 2d 366, 371-72 (S.D.N.Y. 2006); Alessi, 244 F. Supp. 2d at 357.  The Delaware carve-out provides:

> **(A) Actions under State law of State of incorporation**
>     **(i) Actions preserved**
>         Notwithstanding paragraph (1) or (2), a covered class action described in clause (ii) of this subparagraph that is based upon the statutory or

---

[1]   In its reply brief in support of its motion to remand, the plaintiff appears to argue that its claims do not meet the fourth requirement of SLUSA's preemption provision because the alleged misrepresentations were not "in connection with the purchase or sale" of any covered security.  The plaintiff sought to distinguish its claims from the "holder" claims that the Supreme Court found met the "purchase of sale" condition in Dabit because the plaintiff never alleges that it would have sold its shares had it known the truth about the stock option backdating scheme.  See Dabit, 126 S. Ct. at 1515 (finding the distinction between "holders" and "purchasers or sellers" irrelevant for the purposes of SLUSA preemption).

During argument on the present motions, plaintiff's counsel indicated that the Pension Fund had not in fact intended to argue that its claims did not meet the "purchase or sale requirement," and he conceded that the four requirements for the core SLUSA preemption provision, 15 U.S.C. § 78bb(f)(1), are met in this case.  He clarified that the plaintiff intended only to point out the inconsistency in the defendants' positions by conditionally arguing that if the Court found that the plaintiff's claims did not involve conduct "with respect to the sale of securities" as required to fall within the Delaware carve-out, discussed below, then the Court must also find that the claims failed to meet the "purchase or sale" condition and hence did not fall within SLUSA's preemptive scope at all.

common law of the State in which the issuer is
incorporated (in the case of a corporation) or
organized (in the case of any other entity) may
be maintained in a State or Federal court by a
private party.

**(ii) Permissible actions**
A covered class action is described in this
clause if it involves--
**(I)** the purchase or sale of securities by
the issuer or an affiliate of the issuer
exclusively from or to holders of equity
securities of the issuer; or
**(II)** any recommendation, position, or other
communication with respect to the sale of
securities of an issuer that--
**(aa)** is made by or on behalf of the
issuer or an affiliate of the issuer to
holders of equity securities of the issuer;
and
**(bb)** concerns decisions of such equity
holders with respect to voting their
securities, acting in response to a tender
or exchange offer, or exercising dissenters'
or appraisal rights.

15 U.S.C. § 78bb(f)(3)(A).  If a federal court finds that an

action under § 78bb(f)(2) is preserved by the Delaware carve-

out, the court must remand the action to the state court.[2]  15

U.S.C. § 78bb(f)(3)(D); see also Spielman, 332 F.3d at 126;

Alessi, 244 F. Supp. 2d at 357-58.

While the plaintiff asserts that both prongs (I) and (II)

of the Delaware carve-out apply to this case, the parties

---

[2]  The general federal remand statute, 28 U.S.C. § 1447(c), provides that
whenever before final judgment it appears that the district court lacks
subject matter jurisdiction, "the case shall be remanded."  The Second
Circuit Court of Appeals has held that a remand pursuant to SLUSA's remand
provision, 15 U.S.C. § 78bb(f)(3)(D), is an alternative way of stating that
subject matter jurisdiction under SLUSA is lacking, and hence such a remand
is governed by 28 U.S.C. § 1447(c) and (d).  See Spielman, 332 F.3d at 127.

focused on prong (II) at argument on these motions and the Court finds prong (II) dispositive, as discussed below, and it is therefore unnecessary to reach prong (I).  A covered class action that is based upon the law of the state in which the issuer is incorporated may be maintained under prong (II) if it meets three requirements:  it must "involve" (1) "any recommendation, position, or other communication with respect to the sale of securities" of the issuer that (2) "is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer" and that (3) "concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights."  See Superior Partners v. Chang, 471 F. Supp. 2d 750, 753 (S.D. Tex. 2007) (citing Alessi, 244 F. Supp. 2d at 358).

The plaintiff alleges that L-3 is a Delaware corporation and Count One of the Complaint is a claim for breach of the fiduciary duty of disclosure under Delaware law, meeting the threshold requirement under 15 U.S.C. § 78bb(f)(3)(A)(i).  (See Compl. ¶¶ 5, 20-26, 65-71.)  The plaintiff contends that its allegations also meet each additional requirement of prong (II) of the Delaware carve-out.  The Complaint alleges that the defendants misrepresented the way the strike prices for L-3's stock options were calculated in proxy statements sent to

shareholders (id. ¶¶ 3, 38-39, 42, 45, 48, 51, 67-68, 74-75) and
that these misstatements led the shareholders to authorize the
Board to dedicate 6.5 million additional shares to the stock
option plan (id. ¶¶ 54-55).  The plaintiff contends that these
allegations involve "recommendation[s]" or "communication[s]
with respect to the sale of securities of an issuer" and thus
meet the first requirement.  The communications were "made by or
on behalf of the issuer . . . to holders of equity securities of
the issuer" because the defendants, on behalf of L-3, issued
proxy statements to the corporation's shareholders.  (See id. ¶¶
1-3, 36-39, 42, 45, 48, 51, 54, 67-68, 74-75.)  Finally, the
plaintiff argues that the third requirement is met because the
2004 proxy statement sought shareholder approval of an increase
in the shares authorized for stock option grants and thus
"concerns decisions of such equity holders with respect to
voting their securities."  (See id. ¶¶ 1-3, 38-39, 54-55, 69-70,
76-77.)

The defendants take issue with the Pension Fund's reading
of prong (II) of the carve-out and counter that, in light of the
SLUSA's legislative history and the related case law, claims
relating to the amendment of a stock option plan do not fall
within the carve-out's limited purview.  The defendants argue
chiefly (1) that the alleged communications about the proposed
amendment to the stock option plan were not "with respect to the

sale of securities," and (2) that where, as here, the alleged communications concerned shareholders' decision to vote their securities, prong (II) applies only where the vote at issue related to mergers and acquisitions or other "extraordinary transactions."  These primary arguments are addressed in turn.

**A.**

The defendants argue that the phrase "with respect to the sale of securities" in prong (II) of the Delaware carve-out is more limited in scope than the admittedly similar phrase "in connection with the purchase or sale of a covered security" in the core SLUSA preemption provision.  They conclude that while the Complaint includes sufficient allegations to meet the "in connection with the purchase or sale of a covered security" requirement for SLUSA preemption, the same allegations concerning misrepresentations in L-3's proxy statements are not "with respect to the sale of securities."

In support of this conclusion, the defendants rely on SLUSA's legislative history, which they say suggests that SLUSA's core preemption provision should be interpreted broadly and therefore requires a narrow construction for exceptions to SLUSA's preemptive scope.  As the defendants note, the Supreme Court endorsed a broad construction of SLUSA's core provision in Dabit, see 126 S. Ct. at 1513 ("A narrow reading of the statute

11

would undercut the effectiveness of the 1995 [PSLRA] and thus run contrary to SLUSA's stated purpose . . . .") , although it is less clear that the Court intended a narrow interpretation of the Delaware carve-out, which was not at issue in the case.  In fact, lower courts have often stated that the Delaware carve-out should be construed consistently with its broad language.  See, e.g., In re Metlife Demutualization Litig., 00 Civ. 2258, 2006 WL 2524196, at *6, *7 (E.D.N.Y. Aug. 28, 2006) (finding "[t]he definition of 'involve' [in the Delaware carve-out] is quite broad" and concluding that the carve-out preserved state law claims related to an insurer's demutualization program); Lewis, 445 F. Supp. 2d at 372 (reviewing the Senate Report on SLUSA and construing the term "involves" in the Delaware carve-out broadly); Gibson v. PS Group Holdings, Inc., 00 Civ. 372, 2000 WL 777818, at *5-*6 (S.D. Cal. June 14, 2000) (rejecting attempt to impose venue restriction on Delaware carve-out based on selective legislative history).

The plaintiff relies on a recent decision by Magistrate Judge Edward Chen in the Northern District of California in a case involving nearly identical allegations about the backdating of stock options.  See City of Ann Arbor Employees' Ret. Sys. v. Gecht, No. C-06-7453, 2007 WL 760568 (N.D. Cal. Mar. 9, 2007). The plaintiff in Gecht, who was represented by counsel for the plaintiff in this case, alleged that the officers and directors

of Electronics for Imaging, Inc. ("EFI") failed to disclose in EFI's 2006 proxy statement their practice of backdating stock option grants.  Id. at *1.  The defendants in Gecht, much like the defendants here, argued that a proxy statement seeking authorization for the issuance of more stock options was not sufficiently related to a "sale of securities" to constitute a communication "with respect to the sale of securities."  Id. at *4.  The court decided against the defendants, finding that the allegations fell within the scope of prong (II) of the Delaware carve-out.[3]  See id. at *4-*7.

In reaching this conclusion, the court interpreted the Delaware carve-out phrase "with respect to" to determine whether it differed in any significant way from the phrase "in connection with" that appears in SLUSA's core provision and elsewhere in the securities laws.  See id. at *4.  Contrary to the defendants' suggestion (both in Gecht and here), the court found no indication in SLUSA's language or legislative history to suggest that Congress intended the two phrases to imply a difference in scope, and it found the plain meaning of the two phrases to be essentially indistinguishable.  Id.  Accordingly, the court looked to the Supreme Court and lower courts' abundant discussion of the scope of "in connection with," including the

---

[3]  The court ultimately denied the plaintiff's motion to remand in Gecht because removal was appropriate on diversity grounds pursuant to 28 U.S.C. § 1441(b).  Gecht, 2007 WL 760568 at *10.

Supreme Court's analysis in Dabit, to guide its interpretation. Id. at *4-*7. An alleged fraud is "in connection with" a purchase or sale of securities under SLUSA if the fraud "coincides" with or is "more than tangentially related" to the transaction. Id. at *4 (citing Dabit, 126 S. Ct. at 1513; Falkowski v. Imation Corp., 309 F.3d 1123, 1130-31 (9th Cir. 2002)). Following Dabit's lead in examining the case law interpreting the "in connection with" language in the context of Rule 10b-5 claims, the court also noted that fraud is "in connection with" a purchase or sale when there is a "transactional nexus" between the fraud and the transaction. Gecht, 2007 WL 760568 at *5. The court determined that the allegedly fraudulent proxy statements that concealed the backdating of stock option grants bore more than a "tangential" relationship to the ultimate stock option grants under the plan (which themselves qualify as "sales" under the existing case law). Id. at *6. In particular, the court found the causal chain between the communications and the ultimate "sales" to be short, recognizing that the shareholder vote proposed in the proxy solicitation was a "necessary predicate to any further grants of backdated options, options contemplated by the complaint." Id. at *6.

Faced with the Gecht court's analysis of a complaint closely analogous to the plaintiff's allegations here, the

defendants argue that the Gecht case was wrongly decided.  The
defendants take issue with the court's reliance upon judicial
interpretations of the "in connection with" phrase in construing
the Delaware carve-out's "with respect to" phrase.  While the
defendants correctly note that a canon of statutory construction
holds that "when the legislature uses certain language in one
part of the statute and different language in another, the court
assumes different meanings were intended," Sosa v. Alvarez-
Machain, 542 U.S. 692, 711 n.9 (2004) (internal quotation marks
omitted), it is difficult to see how this interpretive canon can
assist in distinguishing such generalized prepositional
connectors as "in connection with" and "with respect to" in a
plausible way.  The defendants also argue that treating the two
phrases as equivalent would cause the exception to swallow the
rule.  However, the language of the Delaware carve-out plainly
includes other conditions that limit its scope, and there is no
question that many state class actions that are analogous to
Rule 10b-5 damages claims for misrepresentations in public SEC
filings, for example, would remain preempted under SLUSA even
with Gecht's interpretation of the Delaware carve-out.

The defendants' argument goes further toward advocating
some distinction between the two phrases on policy grounds than
toward setting a clear boundary beyond which the Delaware carve-
out phrase should not reach.  The defendants ultimately contend

that Congress's purpose in enacting SLUSA should guide the Court to limit communications "with respect to the sale of securities" to ones that are "closely related" to a sale of securities. But, even if that gloss were placed on the words, the communications in this case, as in <u>Gecht</u>, were indeed closely related to a sale of securities.

The defendants rely on a recent decision addressing prong (II) of the Delaware carve-out which supports their effort to distinguish these two phrases.  See <u>Fisher v. Kanas</u>, 487 F. Supp. 2d 270, 280 (E.D.N.Y. 2007).  The plaintiff in the <u>Fisher</u> case alleged that North Fork Bancorporation, Inc. made misrepresentations about its executive compensation policies in its proxy statements, which led shareholders to elect directors who allowed the defendants to receive excessive compensation. <u>Id.</u> at 272-73.  The court found that prong (II) of the carve-out did not apply to the plaintiff's allegations because the alleged misrepresentations in North Fork's proxy statements related to executive compensation but were not "regarding the sale of North Fork securities."  <u>Id.</u> at 280.[4]  The court noted that "[a]lthough for SLUSA purposes, there is a sufficient 'connection' between the misrepresentations in the proxy statements, the executive

---

[4]  While the <u>Fisher</u> court appears to be construing the phrases "in connection with" and "with respect to," the court used the word "regarding" rather than the statutory term "with respect to."  See <u>Fisher</u>, 487 F. Supp. 2d at 280.

compensation and the decline in stock prices, it is undisputed that this case does not involve a communication directly discussing the sale of securities."   Id.

The Fisher decision is unpersuasive support for the defendants in this case.  First, the plaintiff in Fisher did not address the Delaware carve-out until her reply brief and the court thus found the argument waived.   Id. at 278.  The court's findings with respect to the carve-out are thus arguably dicta and apparently did not have the benefit of vigorous briefing. Moreover, Gecht involved allegations about misleading proxy statements that were nearly identical to those raised by the plaintiff here and that bore a clear causal relationship to the "sale of securities" that occurred when EFI granted its stock options.  The causal chain in Fisher was far more attenuated. The vote at issue in Fisher was with respect to the election of directors rather than with respect to the authorization for shares to be included in a stock option plan.  Because Gecht's interpretation of prong (II) of the Delaware carve-out is persuasive, the Court finds that the alleged communications were "with respect to the sale of securities."

**B.**

The defendants' also seek to limit the applicability of prong (II) of the Delaware carve-out only to communications that

relate to mergers or acquisitions or other "extraordinary transactions."  As an initial matter, the defendants' reading of the carve-out conflicts with the plain meaning of the final clause of prong (II).  This clause contains a disjunctive list with three types of decisions equity holders might face:  (1) "voting their securities," (2) "acting in response to a tender or exchange offer," and (3) "excercising dissenters' or appraisal rights."  See 15 U.S.C. § 78bb(f)(3)(A)(ii)(II)(bb). There is no textual basis for limiting the first item in the list, "voting their securities," by requiring it to include one of the other two items, as the defendants suggest.[5]

Undeterred by the plain language, the defendants argue that the legislative history and the existing cases that have found prong (II) of the carve-out applicable suggest that it should be limited to cases involving major corporate changes.  But the defendants' selective citation of congressional debate on SLUSA that focuses on state law claims relating to "mergers or other sell orders" cannot suffice to read out of the statute an independent basis for claims related to shareholders' voting decisions.  See, e.g., 144 Cong. Rec. E1390 (1998) (extended remarks of Rep. Eshoo) ("The SEC was concerned that the language in our bill would pre-empt, not only cases traditionally filed

---

[5]  The plaintiff astutely notes that such a reading would make little sense because neither tender offers nor the exercise of shareholder appraisal rights typically require a shareholder to "vote."

in federal courts prior to 1995, but also could pre-empt state laws regarding informing stockholders of mergers or other sell orders."). Similarly, the fact that courts that have found prong (II) applicable in cases involving mergers and acquisitions and have therefore focused solely on the language in the statute relating to "tender or exchange offer[s]" does not, as the defendants suggest, mean that that prong (II) is limited to these contexts. Cf. Superior Partners, 471 F. Supp. 2d at 752-56 (carve-out applied to claim involving misleading proxy statements related to a planned merger); Alessi, 244 F. Supp. 2d at 358-59 (carve-out applied to complaint alleging failure to disclose pending merger talks when proposing a stock buyout program); Greaves v. McAuley, 264 F. Supp. 2d 1078, 1082-83 (N.D. Ga. 2003) (carve-out applied to claims relating to a shareholder vote in connection with a proposed merger). As discussed above, other courts have found prong (II) applicable to cases concerning shareholder voting rights that were outside the context of traditional mergers and acquisitions. See, e.g., Gecht, 2007 WL 760568 at *4-*7; Metlife, 2006 WL 2524196 at *6, *7.

The defendants also contend that the case Proctor v. Vishay Intertechnology, Inc., No. C 06-4134, 2007 WL 518616 (N.D. Cal. Feb. 13, 2007), limits the application of prong (II) of the carve-out because the court concluded "that the Delaware carve-

out relates only to communications that are directly related to the exercise of shareholders' voting rights in the context of tender or exchange offers, or dissenter or appraisal rights." Id. at *6.  However, the Proctor court merely found that the asserted claims did not fall within the carve-out because there was an insufficient connection between the alleged communications, occurring over a period of five years, and an ultimate tender offer and freeze out merger that occurred after the plaintiffs' action was first filed.  See id. at *1, *6-*7. There was never any question of a shareholder vote that was unconnected to a "tender offer or merger," as the defendants' selective quotation suggests.

In sum, the defendants cannot escape the plain language of 15 U.S.C. § 78bb(f)(3)(A)(ii)(II)(bb).  Because the plaintiff's allegations relate to communications concerning a shareholder vote to expand L-3's stock option plan, the "voting their securities" element of prong (II) is satisfied.

The Court has considered all of the defendants' remaining arguments with respect to prong (II) of the Delaware carve-out and finds them to be either moot or without merit.  The Court concludes that the allegations in the Complaint meet every requirement to fall within prong (II) of the carve-out, and therefore the case is **remanded** to the state court pursuant to 15 U.S.C. § 78bb(f)(3)(D) and 28 U.S.C. § 1447(c).

III.

The plaintiff also moves for attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  The Supreme Court has held that an award of fees should turn on the "reasonableness of the removal" and that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."  Martin v. Franklin Capital Corp. , 126 S. Ct. 704, 711 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied."  Id.; see also Good Energy, L.P. v. Kosachuk, 06 Civ. 1433, 2006 WL 1096900, at *1 (S.D.N.Y. Apr. 25, 2006).

Given the closeness of the issue in this case and the limited number of decisions, and because the defendants raise "objectively reasonable" legal arguments for limiting the scope of the carve-out, the motion for an award of fees is **denied.**

CONCLUSION

For the reasons stated above, the Class Action Complaint is **remanded** to the New York State Supreme Court, New York County. The plaintiff's motion for an award of attorneys' fees and costs is **denied.**  The defendants' motion to dismiss is **denied.**  The

Clerk of the Court is directed to remand this case to the New

York State Supreme Court, New York County.

SO ORDERED.

Dated:      New York, New York
            July 24, 2007

                                    John G. Koeltl
                              United States District Judge